UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                          Case No. 2:16-cv-65
                                        HON. GORDON J. QUIST
DAVID ISARD, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

       This is a civil rights action brought by state prisoner D'Andre Alexander pursuant to 42 U.S.C. § 1983, against Defendants David Isard, David LaLonde, Kyle Woods, and Gary McLeod. Plaintiff asserts retaliation claims and Eighth Amendment claims against Defendants. Defendants have now moved for partial summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. (ECF No. 19.) Plaintiff has responded. (ECF No. 21.) This matter is now ready for decision.

       The Court has previously summarized Plaintiff's allegations:

> In his complaint, Plaintiff alleges that on December 22, 2013, while he was confined at the Chippewa Correctional Facility (URF), he was involved in a fight. Plaintiff was subsequently informed that there was a hit out on him for being involved in the fight. On January 1, 2014, Plaintiff informed Defendant Woods of the threat. Defendant Woods refused to inform anyone about the hit on Plaintiff.
>
> On February 28, 2014, Plaintiff told Defendants Isard and LaLonde that there was a hit out on him and requested protection. Defendant Isard replied:
>
>> I know you. I'm not doing you any favors and you need to back off healthcare. [Referring to a complaint that Plaintiff

had pending against healthcare.] I'm going to make sure you stay in the Upper Peninsula. Stop complaining and maybe things will change.

*See* ECF No. 1, PageID.7. Defendant LaLonde agreed with Defendant Isard. Plaintiff stated that if he was released to the general population, he would be assaulted. Defendant Isard told him that he would be fine as long as he minded his own business. Defendant Isard also stated that he would send Plaintiff to C or D wing to ensure his safety, since Plaintiff had originally been confined on A wing. Plaintiff insisted that he would not be safe anywhere at URF. On March 10, 2014, Plaintiff executed an affidavit notarized by Defendant McLeod, which asserted that Defendants Isard and LaLonde were deliberately indifferent to Plaintiff's safety needs.

On March 12, 2014, Plaintiff was forced to move to Round Unit in the general population. Plaintiff states that on March 13, 2014, his cell mate asked if Plaintiff was the one who had fought "the homie Cathead." Plaintiff did not respond, but heard a shout from the hallway stating, "You better hurry up and handle that or give back that tobacco." Plaintiff's cell mate then attacked him and knocked him to the floor, where he beat and stomped on Plaintiff for at least five minutes. Plaintiff was subsequently placed back in segregation. The attachments to Plaintiff's complaint show that he received a misconduct for fighting on March 13, 2014, and was found guilty of the misconduct on March 19, 2014. *See* ECF No. 1-1, PageID.18 - PageID.19.

On March 20, 2014, Defendants Isard and LaLonde changed Plaintiff's security level from a IV to a V. Plaintiff states that on April 15, 2014, Defendant McLeod increased Plaintiff's assault risk to very high in response to the misconduct ticket that Plaintiff received in relation to the March 13, 2014, assault. When Plaintiff complained that he was the victim of the assault, Defendant McLeod stated, "If you drop all the legal stuff, I'll make all this level stuff go away. Plaintiff told him that he would think about it. On April 18, 2014, Defendant McLeod asked Plaintiff if he had an answer for him, and Plaintiff stated that he did not know yet. Resident Unit Manager Dunton, who was also present, interjected, "We can get you closer to your family. Just stop pursuing our staff and we'll make that happen." Plaintiff did not respond. Defendant McLeod then stated that Plaintiff had had his chance and would be transferred to Marquette. On April 21, 2014, Plaintiff was transferred to Marquette Branch Prison.

(ECF No. 5, PageID.53-54.)

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that

no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances,

the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief; where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it; or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).[1] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the

---

[1] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In this case, Plaintiff filed one grievance that is related to his claims—Grievance URF-14-03-0873-03B. At Step I, Plaintiff alleged that he was assaulted by his cellmate after Defendants Isard and LaLonde refused to provide Plaintiff with protection. Plaintiff further stated that "URF staff are notorious for disciplining prisoners who request for protection when they refuse to leave segregation." PageID.123. The Step I grievance was denied. At Step II, Plaintiff asserted facts that were similar to the facts asserted at Step I. Plaintiff further stated that he believed "all this is retaliation." PageID.125. The Step II grievance was denied. Plaintiff appealed to Step III, which was also subsequently denied.

Defendants concede that Plaintiff exhausted his Eighth Amendment claims against Defendants Isard and LaLonde. However, Defendants argue that Plaintiff failed to exhaust his retaliation claims against Defendants Isard and LaLonde. The undersigned disagrees. At every step of URF-14-03-0873-03B, Plaintiff alleged some facts to establish that Defendant Isard and LaLonde were retaliating against him when they refused to provide protection for Plaintiff.

Specifically, at Step I, Plaintiff alleged that prison officials often discipline prisoners who request protection. Moreover, at Step II, Plaintiff expressly stated that he believed he was being retaliated against. Therefore, in the opinion of the undersigned, Plaintiff exhausted his retaliation claims against Defendants Isard and LaLonde.

Next, Defendants argue that Plaintiff did not exhaust his claims against Defendant Wood. Plaintiff argues that he exhausted all *available* remedies because he attempted to file a grievance against Defendant Wood on January 1, 2014. Plaintiff alleges that he never received a response to this grievance. PageID.10. Defendants failed to file a reply brief or present any evidence contradicting Plaintiff's argument that he attempted to file a grievance against Defendant Wood. Therefore, in the opinion of the undersigned, there is a genuine issue of fact as to whether Plaintiff exhausted all available administrative remedies on his retaliation claim against Defendant Wood. *See Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

Finally, Defendants argue that Plaintiff failed to exhaust his claims against Defendant McLeod. Plaintiff contends that he exhausted his claims against Defendant McLeod because he added Defendant McLeod's name at Step II in Grievance URF-14-03-0873-036. Plaintiff further states that the grievance coordinator often rejects grievances that are related to a previous grievance but add a new correctional officer. Thus, Plaintiff argues that by adding Defendant McLeod at Step II, he exhausted his claims against him.

After examining Plaintiff's Step II grievance, the undersigned finds that Plaintiff did not put forth any facts that would exhaust his claims against Defendant McLeod. In his response brief, Plaintiff states that he added Defendant McLeod to the second page of his Step II grievance. There does not appear to be any mention of Defendant McLeod on that page. PageID.125. However, Plaintiff may have written Defendant McLeod's name on the first page of

the grievance.[2] Assuming this is Defendant McLeod's name, Plaintiff only mentions that Defendant McLeod extended a deadline to respond to a grievance. Plaintiff does not allege any facts that could resemble a retaliation or Eighth Amendment claim against Defendant McLeod. In addition, Plaintiff's complaint describes events related to Defendant McLeod that occurred after April 16, 2014. Because the Step II grievance was filed on April 16, 2014, it is impossible that Plaintiff could have included those claims at Step II. Therefore, in the opinion of the undersigned, Plaintiff failed to exhaust all available administrative remedies on his claims against Defendant McLeod.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 19) be granted in part and denied in part. Plaintiff failed to exhaust his claims against Defendant McLeod; therefore, the claims against Defendant McLeod should be dismissed. However, Plaintiff's retaliation and Eighth Amendment claims against Defendants Isard, LaLonde, and Wood remain in this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: February 14, 2017

      /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

---

[2] It should be noted that Plaintiff's handwriting is difficult to read.